IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AMY McCOMBS, | ) | CASE NO. 4:08 CV 1475 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

**Introduction**

This is an action for judicial review of the final decision of the Commissioner of Social Security denying the applications of the plaintiff, Amy McCombs, for disability insurance benefits and supplemental security income. The parties have consented to magistrate judge's jurisdiction.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that McCombs had severe impairments consisting of COPD/asthma; facet arthropathy, morbid obesity, and periodic leg movement syndrome.[1] The ALJ determined that McCombs had the following residual functional capacity:

> The claimant has the residual functional capacity to lift and carry ten pounds, walk and/or stand for two hours in an eight-hour workday and sit for six hours in an eight-hour workday when she is allowed to alternate sitting and standing

---

[1] Transcript ("Tr.") at 15.

periodically.  The claimant can perform tasks not exposing her to excessive dust, fumes, smoke, or lung irritants.[2]

The ALJ decided that the above-quoted residual functional capacity rendered McCombs unable to perform any past relevant work.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity quoted above, the ALJ determined that a significant number of jobs existed locally (in Pennsylvania) and nationally that McCombs could perform.  The ALJ, therefore, found McCombs not under a disability.[4]

McCombs asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record.  Specifically, McCombs argues that substantial evidence does not support the residual functional capacity finding.  Further, she maintains that the Commissioner failed to meet the burden at step five because the vocational expert identified jobs existing in Pennsylvania rather than in Ohio, where McCombs resides.

As discussed below, I conclude that the ALJ's finding at step five of the sequential evaluation process does not have the support of substantial evidence because of the absence from the administrative record of a proper vocational expert's opinion as to jobs existing in the region where McCombs lives or in several regions of the country.  The case, therefore,

---

[2] *Id.* at 18.

[3] *Id.* at 20.

[4] *Id.* at 22.

must be remanded for further proceedings.  On remand, the ALJ should also reconsider the

residual functional capacity finding with the assistance of a medical opinion as to

McCombs's work-related limitations.

## Analysis

### 1.    Standard of review

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable

to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[5]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds

could reach different conclusions on the evidence.  If such is the case, the Commissioner

_____

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[6]  The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[7]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.      The challenge to the vocational expert's testimony as to jobs existing in Western Pennsylvania**

In response to the hypothetical posed by the ALJ, the vocational expert testified as to jobs existing nationally and in the Commonwealth of Pennsylvania.[8]  Although the brief of the plaintiff suggests that the hearing was by video teleconference,[9] the transcript itself states that the hearing took place before the ALJ at the "Office of Hearings and Appeals in Pittsburgh."[10]

The Commissioner bears the burden of proof[11] at step five of the sequential evaluation process as to the existence of substantial gainful work in the national economy, defined as "work which exists in significant numbers either in the region where such individual [the

---

[6] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[7] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[8] Tr. at 889.

[9] ECF # 16 at 19-20.

[10] Tr. at 872, 874.

[11] *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

claimant] lives or in several regions of the country."[12]  A commonsense reading of the unambiguous language in the statute supports the requirement that the Commissioner must show that work exists in significant numbers either in the region where the claimant lives or in several (more than one) other regions of the country.  Proof that work exists in significant numbers in a single region other than that in which the claimant lives will not suffice.

McCombs's argument here is straightforward.  She does not live in Pennsylvania, and the only proof in the record of work in significant numbers relates to only one region other than that in which she lives, that region being Pennsylvania.

The Commissioner counters that under the Sixth Circuit's interpretation of the statute, the fact that the claimant must travel some distance to reach work that exists in significant numbers does not necessarily defeat proof at step five.  In *Harmon v. Apfel*,[13] the court found the vocational expert's testimony as to existing jobs adequate even though the jobs identified were located 70 miles from the claimant's home.[14]

The Sixth Circuit's decision in *Harmon*, and the other authorities cited in the Commissioner's brief,[15] do not control the decision on the facts here.  McCombs lives in Lisbon, Ohio.[16]  According to Google Maps, Lisbon is 57 miles from Pittsburgh and 95 miles

---

[12] 42 U.S.C. § 423(d)(2)(A).

[13] *Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999).

[14] *Id.* at 291-92.

[15] ECF # 18 at 18.

[16] Tr. at 876.

from Cleveland.[17]  As such, under *Harmon*, the vocational expert's testimony would suffice if limited to jobs existing in Western Pennsylvania.  Here, however, the vocational expert testified as to jobs existing in the entire Commonwealth of Pennsylvania.  Given that the eastern part of that commonwealth is at a distance well beyond the 75-mile distance referred to in *Harmon*,[18] and contains the commonwealth's largest metropolitan area, Philadelphia,[19] I cannot conclude that Pennsylvania can be considered the region in which McCombs resides for purposes of the requirements of the relevant statute.

Although I strongly suspect that a vocational expert's testimony regarding the specific number of jobs existing in Northeastern Ohio or Western Pennsylvania would meet the Commissioner's burden at step five consistent with *Harmon*, I cannot conclude that substantial evidence exists on this record to support the step five finding.  The case, therefore, must be remanded for reconsideration of whether a significant number of jobs exists in either the region in which McCombs lives or several regions of the country that she could have performed.

---

[17] http://maps.google.com.

[18] *Id.*  Philadelphia, Pennsylvania, is 361 miles from Lisbon, Ohio, and Harrisburg, Pennsylvania, is 260 miles.

[19] According to population figures as of 2003 U.S. Census estimates, metropolitan Philadelphia had a population of 3,849,647, whereas metropolitan Pittsburgh had a population of 2,410,330.  http://en.wikipedia.org/wiki/Pennsylvania_metropolitan_areas.

**3.     The residual functional capacity finding**

Since this case must be remanded, I will make the following observations regarding McCombs's challenge to the residual functional capacity finding.

The ALJ made a very restrictive residual functional capacity finding, limiting McCombs to less than sedentary work.  For all practical purposes, the ALJ made this finding without the assistance of a residual functional capacity opinion from a medical source.  As the ALJ acknowledges, the state agency did not provide a physical residual functional capacity assessment.[20]  The ALJ did not call a medical expert to testify at the hearing. Although there was a consultative physical examination by William Padamadan, M.D.,[21] Dr. Padamadan concluded that McCombs had no indication for limitation of physical activities,[22] an opinion that the ALJ implicitly rejected by adopting the restrictive residual functional capacity finding.  Although the ALJ briefly summarizes Dr. Padamadan's evaluation in his decision,[23] he makes no reference to it in his articulation as to McCombs's residual functional capacity.[24]

---

[20] *Id.* at 20.

[21] *Id.* at 280-93.

[22] *Id.* at 283.

[23] *Id.* at 16.

[24] *Id.* at 18-20.

This case raises the question similar to that presented in *Deskin v. Commissioner of Social Security*:[25]  When should an ALJ decide a case in the absence of a competent medical opinion of a treating physician, consulting examiner, or medical expert as to the claimant's functional capacity?  As I stated in *Deskin*, "[t]his question underscores the tension between the claimant's burden of proof through step four of the sequential evaluation process and the ALJ's duty to develop the record."[26]

The *Deskin* opinion summarizes the law applicable to the current inquiry of whether the ALJ acted properly by making a residual functional capacity finding here without the assistance of a competent medical source opinion:

> Unquestionably, the claimant bears the burden of proof as to the existence and severity of the limitations caused by her impairments.  Under the regulations, the ALJ does have responsibility to develop the administrative record.  20 C.F.R. § 416.945(a)(3) states that "we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get the medical records from your medical sources."  20 C.F.R. § 416.912(d) states that it is "our responsibility" to "develop your complete medical history for at least 12 months preceding the month in which you file your application...."  That responsibility includes recontacting medical sources if the evidence "is inadequate for us to determine whether you are disabled...."  In *Day v. Shalala*, the Sixth Circuit held that the agency's responsibility to obtain all medical evidence necessary to properly make the disability determination included the duty to make an effort to obtain from the treating physician an opinion as to the claimant's ability to perform work-related activities.
>
> While acknowledging that the ALJ has discretion on whether to order a consultative examination or call a medical expert at the hearing, nevertheless,

---

[25] *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (6th Cir. 2008).

[26] *Id.* at 911.

bottom line, the ALJ's ultimate residual functional capacity finding must have the support of substantial evidence in the administrative record.  Where the ALJ proceeds to make the residual functional capacity decision in the absence of a medical opinion as to functional capacity from any medical source, or, as here, with one made without the benefit of a review of a substantial amount of the claimant's medical records, there exists cause for concern that such substantial evidence may not exist.

Ultimately, at step four of the sequential evaluation process, the ALJ must determine how the claimant's severe impairments translate into work-related capabilities or limitations.  This is the residual functional capacity finding against which the claimant's ability to perform his or her past relevant work, or other job existing in significant numbers locally or nationally, is gauged.

Critical to this residual functional capacity finding are residual capacity opinions offered by medical sources such as treating physicians, consultative examining physicians, medical experts who testify at hearings before the ALJ, and state agency physicians who reviewed the claimant's medical records.  In making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.  The District Judge in *Rohrberg v. Apfel* appropriately explained the limitations on the ALJ's ability to interpret medical data and the importance of medical opinions regarding capabilities and limitations to the residual functional capacity finding:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.  Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."
>
> In this case, the ALJ determined Rohrberg's RFC on a disbelief of the bare medical findings in her doctors' reports as well as Rohrberg's testimony.  The ALJ failed to refer to – and this Court has not found – a proper, medically determined RFC in the record.  Consequently, the Court concludes that there was

not substantial evidence to support the ALJ's RFC determination.

To be sure "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physicians's assessment."  A functional capacity opinion from a medical source may not be necessary in every case. But, as Judge Richard Posner of the Seventh Circuit warned in *Schmidt v. Sullivan*, "[t]he medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomenon are often wrong."  When a claimant has sufficiently placed his or her functional inability at issue, "the ALJ must measure the claimant's capabilities, and to make that measurement, an expert's RFC evaluation is ordinarily essential...."

As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity."

Admittedly, viewing McCombs's respiratory impairment and lumbar impairment in isolation, evidence exists supporting the residual functional capacity finding.  Given the obesity overlay and the analytical considerations outlined in Social Security Ruling 02-1p, this case cannot be classified among the limited number of cases where the medical evidence shows "relatively little physical impairment" and an ALJ "can render a commonsense judgment about functional capacity."[27]

Further, evidentiary development may well validate that the ALJ made the proper

residual functional capacity finding without the assistance of a competent medical source

opinion.  Nevertheless, given the necessary remand on the step five issue, the ALJ should

---

[27] *Id.* at 911-12 (citations omitted).

reconsider the residual functional capacity finding with the assistance of an opinion from at least a medical expert.

## Conclusion

Based on the foregoing, the decision of the Commissioner denying McCombs's applications for  disability insurance benefits and supplemental security income is reversed and the case remanded for reconsideration at step five with an opinion of a vocational expert as to jobs existing in the region where McCombs lives or in several regions of the country and for reconsideration of the residual functional capacity finding with the assistance of a medical opinion as to McCombs's work-related limitations.

For purposes of any potential application for attorney's fees under the Equal Access to Justice Act,[28] the Court concludes that the position of the Commissioner was substantially justified.

IT IS SO ORDERED.


Dated:  May 29, 2009                                    s/ William H. Baughman, Jr.
                                                        United States Magistrate Judge

---

[28] 28 U.S.C. § 2412(d)(1)(A).